```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA          :
                                  :
     -against-                    :
                                  :         No. 25-CR-361 (PKC)
HECTOR BERMUDEZ, et al.,          :
                                  :
              Defendants.         :
-------------------------------------------------------X
```

# DEFENDANT'S MOTION TO REVOKE
# THE MAGISTRATE JUDGE'S ORDER OF DETENTION

PLEASE TAKE NOTICE that Defendant Hector Bermudez, by and through his counsel of record, respectfully moves this Court for an order revoking the detention order issued December 4, 2025, pursuant to 18 U.S.C. § 3145(b). The defense requests to proceed with a hearing on this motion as soon as the matter may be heard, pursuant to the mandate of 18 U.S.C. § 3145(b) that a motion for revocation "shall be determined promptly" before the assigned district judge.

This motion is made pursuant to the United States Constitution; 18 U.S.C. § 3145(b); Federal Rule of Criminal Procedure 12(b)(2); and all applicable statutory and case law.

1

This motion is supported by this Notice of Motion; the attached Memorandum of Law; the files and records of this case; and such argument and further law and evidence as may be presented at the time of the hearing.

Dated: Brooklyn, New York
December 8, 2025

Respectfully submitted,

_____/s/_____
NICHOLAS T. HINE, ESQ
Hine Law PLLC
P.O. Box 170096
Brooklyn, NY 11217

_____/s/_____
GARY M. KAUFMAN, ESQ
Law Office of Gary Kaufman, PLLC
377 Broadway, 8th Floor
New York, New York 10013
(347) 855-9102

*Attorneys for Hector Bermudez*

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
UNITED STATES OF AMERICA                :
                                        :
     -against-                           :
                                        :      No. 25-CR-361 (PKC)
HECTOR BERMUDEZ, et al.,                :
                                        :
                    Defendants.          :
-------------------------------------------------X
```

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO
REVOKE THE MAGISTRATE JUDGE'S ORDER OF DETENTION**

**I.     INTRODUCTION**

On December 2, 2025, Defendant Hector Bermudez made his initial appearance and was arraigned on an indictment charging him with violations of 18 U.S.C. §§ 2251(a), 2251(e), 2252(a)(2), 2252(b)(1), 2252(a)(4)(B), 2252(b)(2), and 875(d), and alleging that Mr. Bermudez was a member of a child exploitation enterprise known as "Greggy's Cult," an internet-based group that operated in or about and between 2019 and 2021 on the Discord communications platform. Mr. Bermudez entered a plea of not guilty to each count alleged in the indictment.

Mr. Bermudez is a 29-year-old man with no criminal history who suffers from █████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

1

██████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████████████████
██████████████████████████████████████
███████████████████████████████████
████████████████████████████

      In light of Mr. Bermudez's serious health conditions and the attendant risks posed by pretrial incarceration, the Pretrial Services Officer recommended that Mr. Bermudez be released upon an interview with his mother and investigation of his household on a moderate unsecured bond co-signed by a financially responsible surety. Pretrial Services Report 5. At counsel's request, Magistrate Judge Pollak continued the detention hearing to December 4 to give counsel sufficient time to establish contact with Mr. Bermudez's mother and arrange suretors.

      Prior to his arraignment, Mr. Bermudez had been taken to the hospital for a fitness for incarceration evaluation. The hospital was unwilling to release Mr. Bermudez, but he signed himself out against medical advice after law enforcement assured Mr. Bermudez that he could return to the hospital after court. Following the hearing, law enforcement refused to return Mr. Bermudez to the hospital and took him directly to the Metropolitan Detention Center ("MDC") where he was not seen by medical personnel until the next day.

      On December 4, Mr. Bermudez appeared before Magistrate Judge Vera Scanlon for the detention hearing. Mr. Bermudez's mother, aunt, and cousin came to court to support Mr. Bermudez and co-sign a significant bond package. Defense counsel presented a bond package in

the amount of $575,000, consisting of a $250,000 appearance bond co-signed by Mr. Bermudez's mother, aunt, and cousin, and a property bond of $375,000 secured by the apartment of Mr. Bermudez's mother. The Pretrial Services Officer interviewed Mr. Bermudez's mother and confirmed that his mother would be willing to facilitate electronic monitoring and otherwise limit his access to the internet through password protection and device removal, as directed by Pretrial Services. The Pretrial Services Officer reiterated the recommendation of release to home detention, with the additional condition of internet monitoring so that Mr. Bermudez could have access to a monitored mobile device for telehealth visits. Under this form of monitoring, Pretrial Services would monitor the home internet connection to ensure that no unauthorized devices are connected and monitor any approved device in the possession of Mr. Bermudez through a spyware program that is designed for intensive electronic monitoring.

Given the nature of the charges, a rebuttable presumption applies that no condition or combination of conditions will reasonably assure appearance as required and the safety of the community. At the detention hearing, Mr. Bermudez sufficiently rebutted the presumption by way of credible evidence that his severe and complex health conditions require a higher level of care than can be provided by the Bureau of Prisons, and that he has no criminal record, has significant ties to the local community, is unable to flee the jurisdiction as a result of ███████████████████████████████████████████, has a third-party custodian available, and has multiple sureties willing to post a substantial bond package comprised of both an unsecured appearance bond and property bond. Defense counsel also emphasized the unique danger posed to Mr. Bermudez's health at the MDC, where he will be housed in an unsanitary environment and likely will not receive all necessary treatment and medication, especially as we head into the winter months where COVID-19 and influenza will likely run rampant at the MDC.

3

The court ordered Mr. Bermudez's detention. The court did not appear to view Mr. Bermudez as a flight risk, given his debilitating condition and reliance on the local network of doctors who have been caring for him for years and the specialized pharmacies that provide the numerous medications he needs to survive. Yet Judge Scanlon agreed with the government that Mr. Bermudez posed a risk of future dangerousness and that the proposed conditions were inadequate to reasonably protect the community. The court acknowledged the risks to Mr. Bermudez's health and ordered the MDC to provide him with appropriate medical care. However, Judge Scanlon did not appear to trust the MDC to comply and ordered the BOP to provide updates on Mr. Bermudez's condition every Monday, Wednesday, and Friday. At Mr. Bermudez's request, Judge Scanlon asked law enforcement to return Mr. Bermudez to the hospital following the hearing.

Contrary to the court's finding, under the totality of the circumstances, including the presumption of innocence, Mr. Bermudez does not represent a danger to the community. Even if the Court were to disagree, there are conditions that can be fashioned that would reasonably assure the safety of the community, and Pretrial Services has identified and confirmed the availability of a combination of conditions sufficient to support release under the Bail Reform Act, as indicated by their ultimate recommendation for Mr. Bermudez's pretrial release. Accordingly, Mr. Bermudez was improperly ordered detained under 18 U.S.C. § 3142, and, pursuant to 18 U.S.C. § 3145(b), he moves this Court for an order revoking the detention order and releasing him on the least restrictive combination of conditions called for under the Bail Reform Act pending trial in this matter.

## II. STANDARD OF REVIEW

A district court reviews *de novo* a magistrate judge's detention order of pretrial detention. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Esposito*, 309 F. Supp. 3d

4

24, 30 (S.D.N.Y. 2018). The district court may rely on the evidence presented before the magistrate judge and may consider additional evidence as necessary. *United States v. Marra*, 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001). In reviewing the magistrate judge's detention order, the district court "should fully reconsider" the decision and "reach its own independent conclusion." *Leon*, 766 F.2d at 80.

III. ARGUMENT

This Court should follow Pretrial Services' recommendation and release Mr. Bermudez with conditions. As the Supreme Court held in *Salerno*, "In our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This presumption of release is encapsulated in the Bail Reform Act, which states that the Court "shall order" pretrial release, 18 U.S.C. § 3142(b), except in certain narrow circumstances. Even if the Court determines that an unsecured bond is not sufficient, the Court "shall order" release subject to "the least restrictive further condition[s]" that will "*reasonably assure*" the defendant's appearance in court and the safety of the community. 18 U.S.C. § 3142(c)(1)(B) (emphasis added). Under this statutory scheme, "it is only a 'limited group of offenders' who should be detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors nondetention."). Release is warranted in this case because there are numerous facts under § 3142(g) that both rebut the presumption of detention and demonstrate that there are conditions of release that will reasonably assure both Mr. Bermudez's appearance in court and the safety of the community.

### A. Legal Standard.

In this case, the statute creates a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3). The presumption inquiry proceeds in two steps. At step one, the Court must consider whether the defense has met the very low burden of production to rebut the presumption. As set forth below, Mr. Bermudez has presented evidence that rebuts the presumption. At step two, the Court must consider the presumption alongside the other § 3142(g) factors—even if the presumption has not been rebutted.

Even in a presumption case, the government retains the ultimate burden of persuasion. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). If, based on the factors set forth in subsection (g), this Court determines that the government has satisfied its burden of persuasion with respect to non-appearance or future danger, this Court must release Mr. Bermudez subject to the least restrictive additional conditions that will reasonably assure his appearance as required and the safety of any other person and the community. 18 U.S.C. § 3142(c). If the government opposes release entirely, as it does here notwithstanding the recommendation of Pretrial Services and the grave risks posed to Mr. Bermudez by detention in the MDC, then it bears the substantial burden of (1) establishing by a preponderance of the evidence that there are no conditions or combination of conditions that will reasonably assure Mr. Bermudez's appearance as required or (2) establishing by clear and convincing evidence that there are no conditions or combination of conditions that will reasonably assure the safety of the community from whatever particularized future danger has been established. *Mercedes*, 254 F.3d at 436. Any close call mandates release subject to the least restrictive conditions. *See Salerno*, 481 U.S. at 755.

The ultimate question is whether there are conditions that can be fashioned—such as the ones Pretrial Services has evaluated and discussed in the report—that would reasonably assure the individual's appearance and the safety of the community. Of course, "reasonably assure" does not mean "guarantee." *United States v. Tortora*, 922 F.2d 880, 884 (1st Cir. 1990) ("Requiring that release conditions *guarantee* the community's safety would fly in the teeth of Congress's clear intent that only a limited number of defendants be subject to pretrial detention."); *United States v. Orta*, 760 F.2d 887, 891–92 (8th Cir. 1985) (en banc); *United States v. Hir*, 517 F.3d 1081, 1092 n.9 (9th Cir. 2008). Finally, the Bail Reform Act should not be used as "a scattershot attempt to incapacitate those who are merely suspected of . . . serious crimes." *Salerno*, 481 U.S. at 750.

### B. Mr. Bermudez Has Rebutted the § 3142(e)(3) Presumption.

Pursuant to 18 U.S.C. § 3142(g), this Court must consider the nature and circumstances of the offense charged, including whether the charged offense raises a rebuttable presumption that there are no conditions a court can fashion that would reasonably assure the defendant's appearance and the safety of the community. Because Mr. Bermudez is charged with offenses involving minor victims, a rebuttable presumption applies in this case. 18 U.S.C. § 3142(e)(3)(E).

The "burden of production is not a heavy one to meet." *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986); *see also United States v. Mattis*, 963 F.3d 285, 292 (2d Cir. 2020) (emphasizing that burden is "one of production, *not* persuasion" that can be satisfied by evidence supporting inference that defendant does not pose danger to community). The presumption of detention can be rebutted by "*[a]ny evidence* favorable to a defendant that comes within a category listed in § 3142(g) . . . including evidence of their marital, family and employment

7

status, ties to and role in the community, clean criminal record and other types of evidence encompassed in § 3142(g)(3)." *Dominguez*, 783 F.2d at 707 (emphasis added).

Mr. Bermudez has readily rebutted the presumption. He is a 29-year-old male with no criminal history and serious health issues that he manages with the aid of his supportive family and his local team of medical providers. He has presented evidence that he faces a stark choice if released: comply with all laws and conditions of release to continue to receive a high standard of healthcare from the doctors who have been treating him his entire life; or violate laws or conditions of release and put his fragile health at the mercy of an institution that is notorious for its failure to provide even basic medical care.

Concerns about the availability of medical care in the MDC are not overblown or speculative. As the Court is no doubt aware, in the last few years the dockets of the Eastern and Southern Districts "have been filled with cases in which defendants complain about near-perpetual lockdowns (no longer explained by COVID-19), dreadful conditions, and lengthy delays in getting medical care." *United States v. Chavez*, 710 F. Supp. 3d 227, 228 & n.3 (S.D.N.Y. 2024) (collecting cases). District courts routinely release or reduce the sentences of inmates due to the conditions of confinement at the MDC, where severe staffing shortages a culture of neglect and lawlessness have contributed to "dangerous, barbaric conditions." *United States v. Colucci*, 743 F. Supp. 3d 452, 453, 455 (E.D.N.Y. 2024); *Chavez*, 710 F. Supp. 3d at 229 & n.6.

The lack of reliable, necessary medical care poses an acute risk to Mr. Bermudez. As Judge Furman recently explained in a detailed opinion on the dire condition of the MDC, "the MDC is notoriously and, in some instances, egregiously slow in providing necessary medical and mental health treatment to inmates—*especially where such care requires the attention of outside*

*providers.*" *Chavez*, 710 F. Supp. 3d at 234 (emphasis added); *see id.* at 234 n.15 (describing an example in which the MDC neglected to transport an inmate with a twisted bowel for emergency surgery for over three months); *Colucci*, 743 F. Supp. 3d at 456 ("That critical medical care is frequently delayed or denied within the facility seems no longer in doubt."). Shockingly, court orders to provide medical care—such as the one issued in this case by Judge Scanlon—are routinely ignored or openly defied. Though there are too many cases to cite, representative examples include: defiance of a court order to transport a defendant with a MRSA infection to a medical facility (the inmate was instead sent to the segregated housing unit ("SHU")); defiance of a court order to transport a defendant for surgery to repair his broken cheek; and defiance of a court order to provide a diabetic inmate with a special diet. *Chavez*, 710 F. Supp. 3d at 234. There is simply no way to ensure the MDC will follow any order to provide appropriate treatment to Mr. Bermudez.

The MDC routinely obstructs inmate access to medical devices and prescriptions. In one instance, an inmate with obstructive sleep apnea was not able to use his CPAP machine for over 85 days because the MDC failed to give him an extension cord. *Chavez*, 710 F. Supp. 3d at 234 n.15. In another instance, an inmate who needed to take 8 mg of Suboxone 3 times per day received only 2 doses per day when he received any medication at all. *Id.* When inmates run out of medication, refills are not guaranteed. When an inmate with asthma ran out of his inhaler medication, the MDC neglected to refill the prescription "despite multiple requests, and even after the defendant had a coughing fit, gasping for air, and wheezing, leading his cellmate to scream for help." *Id.* (quotation and alteration omitted). ████████████████████████████████████████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████

On top of his need for a high standard of medical care, Mr. Bermudez is ████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████. Inmates at the MDC have reported "visible mold on walls and ceilings, contaminated drinking water, vermin infestation, mouse droppings falling through HVAC vents, and roaches and flies in showers." *Chavez*, 710 F. Supp. 3d at 235. It almost goes without saying that the MDC is not a safe environment for ████████████ ████████████████, especially at this time of year when flu, COVID, and RSV cases are on the rise. Confinement to a cell may help prevent contraction of disease in the MDC, but solitary or near-solitary confinement would itself be inhumane. *See Johnson v. Prentice*, 144 S. Ct. 11, 12 (2023) (Jackson, *J.*, dissenting from denial of certiorari); *Chavez*, 710 F. Supp. 3d at 233–34.

At the detention hearing, the government claimed, notwithstanding ample evidence to the contrary, that the MDC can effectively manage Mr. Bermudez's particularly complex and serious medical conditions. But the standard for pretrial release is not whether the MDC can provide just enough care to keep an individual reasonably healthy while they await trial. Perhaps the MDC can manage Mr. Bermudez's illness, and he will survive in the MDC for the months or years it

takes to resolve this case. Perhaps not. Either way, if Mr. Bermudez is released, he will face a choice of complying with conditions of release and continuing to receive appropriate medical treatment or not complying and risking serious illness and death as an inmate in the MDC. Given his extraordinarily strong reason to comply with any and all laws and conditions of release, Mr. Bermudez has presented ample evidence that he neither presents a risk of non-appearance nor a danger to the community. The presumption is therefore rebutted and the burden is on the government to establish that Mr. Bermudez is either a flight risk or a danger, and that there are absolutely no conditions this Court can fashion that will reasonably assure his appearance and the safety of the community—a burden the government cannot carry here.

### C. The Government Cannot Satisfy Its Burden of Establishing That There Are No Conditions This Court Can Fashion That Will Reasonably Assure Mr. Bermudez's Appearance and the Safety of the Community.

The government's argument that no conditions can reasonably assure Mr. Bermudez's appearance or the safety of the community is based entirely on the nature and circumstances of the charged crimes and the weight of evidence. *See* Gov't Detention Memo 4. In this case, the government cannot establish that there are no conditions that this Court can fashion that will reasonably assure Mr. Bermudez's appearance and the safety of the community.

In determining whether a defendant poses a risk of flight or danger to the community, the district court must consider the factors set forth in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged. . .;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including . . . [his] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .

> (4) the nature and seriousness of the danger to any person or to the community that would be posed by the person's release. . . .

18 U.S.C. § 3142(g).

In the present case, the § 3124(g) factors support Mr. Bermudez's release on conditions. There is no question that the crimes charged are serious and that factor one weighs against release, and counsel assumes for the sake of this analysis that the government's evidence is strong and that factor two also weighs against release. But even in a case with strong evidence of serious criminal conduct, the Court's inquiry does not end there. As the Second Circuit recently explained, "the gravity of an offense is not the only factor to be considered by the district court in deciding whether the conditions of release are adequate to ensure the defendants will not flee and do not constitute a continuing threat to the community." *Mattis*, 963 F.3d at 292. Indeed, "[t]he very reason that Congress directed district courts to consider factors beyond just the severity of the offense is the recognition that *an individual is more than the crime of which that individual has been accused*." *Id.* at 293 (emphasis added). Given Mr. Bermudez's unique and complex health conditions, the significant threat to his health posed by indefinite pretrial incarceration, and a bond package and conditions that will reasonably assure the safety of the community, factors three and four weigh strongly in favor of release.

The Second Circuit has affirmed pretrial release in cases of significant criminal allegations and strong evidence where there is a substantial bond in place. In *Mattis*, the court affirmed the release of two defendants accused of throwing a Molotov cocktail into a police vehicle. Though the allegations were of violent and lawless conduct and supported by strong evidence, the court cited the defendants' lack of criminal histories, strong ties to their communities, and bond of $250,000 as sufficient to support release to home detention. *Mattis*, 963 F.3d at 293. In *United States v. Chimurenga*, the Second Circuit affirmed the release of a

12

defendant charged with conspiracy to commit armed robbery as part of an organized criminal organization that plotted to engage in revolutionary acts. 760 F.2d 400, 406 (2d Cir. 1985); *Mattis*, 963 F.3d at 295. The court credited the defendant's lack of criminal record, evidence indicating he was not a flight risk, and bond in the amount of $500,000 as sufficient to ensure his continued appearance and safety of the community. *Chimurenga*, 760 F.2d at 402–03.

Here, Mr. Bermudez's release is supported by a more compelling bond package and more restrictive set of conditions. As described above, if released Mr. Bermudez will face the following choice: comply with the conditions and continue to receive a high standard of healthcare from the doctors who have been treating him his entire life—or violate the conditions of release and risk serious illness and death at the hands of the substandard medical care of the MDC. Mr. Bermudez's compliance would be additionally assured by a substantial bond package that would lead to the seizure of his mother's apartment and leave his closest family liable for $250,000, for a total financial obligation of over $500,000. Not only would non-compliance constitute a grave risk to Mr. Bermudez's physical health, but also it would ruin his family financially and make his mother homeless. Mr. Bermudez will not take this risk and the bond will therefore reasonably assure his appearance and the safety of the community.

Given the availability of conditions that are more than sufficient to ensure Mr. Bermudez's appearance and the safety of the community, the government is likely to emphasize, as it did before Judge Scanlon, the possibility that if released Mr. Bermudez will obtain an illicit device and use it to victimize children. But if the government's principal concern is Mr. Bermudez's access to the internet, it knows full well that the MDC is not an adequate solution. As Judge Furman and Judge Brown documented in great detail, the MDC is flooded with smuggled contraband cellphones. *Chavez*, 710 F. Supp. 3d at 228 & n.4; *Colucci*, 743 F. Supp.

3d at 457–58. Mr. Bermudez will not attempt to access an illicit device during the pendency of this case; however, if he were tempted to, the watchful eye of his mother and substantial bond hanging over his head would provide far more moral suasion than the inmates on his cell block and a permanent order of detention. If Mr. Bermudez is released, any permitted device will be closely monitored by Pretrial Services through spyware software which will make criminal acts immediately detectable, such that bond could be swiftly revoked.

The government also argued that if Mr. Bermudez's mother could not prevent his criminal offenses when he lived with her before, we cannot expect her to prevent him from committing more offenses on home detention. Yet this argument crumbles under the slightest scrutiny. Mr. Bermudez's mother had no knowledge of, and no reason to be concerned about, Mr. Bermudez's internet activities from 2019 to 2021. Needless to say, circumstances have changed dramatically. Mr. Bermudez's family is shocked by the allegations, and his mother is committed to assisting Pretrial Services in enforcing restrictions to and monitoring on Mr. Bermudez's access to devices and the internet. In light of the uniquely compelling circumstances of Mr. Bermudez's physical health and the substantial bond available, the government cannot meet its high burden of showing that there are no conditions this Court can impose that will reasonably assure Mr. Bermudez's appearance and the safety of the community.

## IV. CONCLUSION

For these reasons, Mr. Bermudez's detention violates 18 U.S.C. § 3142 and he respectfully moves this court, pursuant to 18 U.S.C. § 3145(b), for an order revoking the detention order issued December 4, 2025, and releasing him pursuant to the least restrictive conditions necessary to reasonably assure his appearance as required and the safety of the community.

Respectfully submitted,

____/s/_____
NICHOLAS T. HINE, ESQ
Hine Law PLLC
P.O. Box 170096
Brooklyn, NY 11217

____/s/_____
GARY M. KAUFMAN, ESQ
Law Office of Gary Kaufman, PLLC
377 Broadway, 8th Floor
New York, New York 10013
(347) 855-9102

*Attorneys for Hector Bermudez*