UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -                                            25-CR-361 (PKC)

HECTOR BERMUDEZ,
     also known as "Fiasco," "Rogue,"
     and "Diablo."

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO REVOKE ORDER OF DETENTION

The defendant, Hector Bermudez, has moved this Court to revoke the current detention order and release him to home detention. ECF No. 23. For the reasons stated herein, the defendant's motion should be denied.

### I. PROCEDURAL BACKGROUND

The defendant is named in a ten-count indictment that charges him with one count of engaging in a child exploitation enterprise, in violation of Title 18, United States Code, Section 2252A(g); one count of conspiracy to sexually exploit children, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e); one count of conspiracy to receive and distribute child pornography, in violation of Title 18, United States Code, Sections 2252(a)(2) and 2252(b)(1); two counts of sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a) and 2251(e); one count of distribution of child pornography, in violation of 18 U.S.C. § Code, Sections 2252(a)(2) and 2252(b)(1); three counts of access with intent to view child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and 2252(b)(2); one count of conspiracy to communicate interstate threats, in violation of 18 U.S.C. § 875(d). ECF No. 8.

1

The defendant was arrested and made his initial appearance on these charges on December 2, 2025. Following a detention hearing held on December 4, 2025, Chief Magistrate Judge Vera M. Scanlon found that the defendant had failed to rebut the presumption that he was both a danger to the community and risk of flight and that no condition or combination of conditions would mitigate those risks. ECF Nos. 19 & 20. Accordingly, Judge Scanlon ordered the defendant detained pending trial with certain conditions outlined in greater detail below. On December 9, 2025, the defendant moved this Court to revoke that detention order. ECF No. 23. For the reasons below, that motion should be denied.

## II. FACTUAL BACKGROUND

### A. The Defendant's Abuse of Children and Participation in a Child Exploitation Enterprise

The Defendant is charged with committing heinous crimes of child exploitation and extortion as a member of a group called Greggy's Cult. The operation of that group was described in the government's previously-filed detention memorandum. ECF No. 14. In short, members of Greggy's Cult, including the defendant, found minor victims on gaming platforms and other places, groomed them, directed the production of child pornography involving the minor victims (who were as young as 11 years old), recorded that abuse, and then circulated it, including sharing the sexual abuse images to harass their victims or attempt to further the abuse. Members of Greggy's Cult, including the defendant, also engaged in extortion of both minor and adult victims, getting them to engage in degrading acts or other conduct. As part of their prolific abuse, members of Greggy's Cult further encouraged minor victims to engage in self-harm, abuse of others, and even attempted to persuade minor victims to take their own lives.

The defendant, using the aliases "Fiasco," "Rogue," and "Diablo," was a prominent member of that group. Numerous interviews have been conducted in this case, and the defendant is often identified as a significant member of Greggy's Cult. In particular, he has been identified

as a person who recruited people into Greggy's Cult, groomed minors, and took part in threats against minor victims.

His role is exemplified by looking at Greggy's Cult's exploitation of their youngest victim, a prepubescent child. That exploitation occurred over the span of months in late 2020, including multiple separate video calls, which were recorded by members of Greggy's Cult and found on devices seized from those members. During these calls, the members of Greggy's Cult directed the nude minor victim to engage in something called "fansigning." Here, that meant holding up a piece of paper with messages such as "[username] is my master" or "[username] owns me" on it. During one video call, members of Greggy's Cult encouraged the minor victim to hold up one such sign with the name of another person on it. The investigation revealed that this person was disliked by members of Greggy's Cult. The defendant told the minor victim to say the name of a group associated with that person "owns him." The defendant then explained to the Greggy's Cult participants on the call that if they can get the minor victim to do this with other people's names, they will be able to "expose so many people" or "take down" famous social media personalities. In context, it is apparent the defendant was formulating a plan to generate child pornography using the minor victim and point blame at other people. This conduct escalated, by the following month, members of Greggy's Cult convinced the prepubescent minor victim to insert a household object into his anus during a recorded video call. The defendant participated in and encouraged this abuse, telling the minor victim to "look sad and say Greggy did this to me." Later in the video, shortly after the minor victim's anus was exposed to the camera at the direction of Greggy's Cult, the defendant chanted "Greggys child, Greggys child." This exploitation demonstrates that not only did the defendant participate in the exploitation of children – he reveled in it.

The defendant also participated in organized extortions with Greggy's Cult. For example, the group used malware to extort two minors in recorded video calls. At the outset, the defendant messaged one of his co-defendants that the malware had been successful. He directed the co-defendant to get another co-defendant and "lets extort," making his intentions abundantly clear. The defendant and other members of Greggy's Cult proceed to get one of the minors to assault the other and get the younger victim, 12 years old, to send pictures exposing their underwear, among other things.

B. The Defendant's Ongoing Risk to Children

The defendant continued to exploit children long after the conspiracy disbanded following the arrest of co-defendant, Zachary Dosch in mid-2021. Rather than being deterred by that arrest and prosecution, the defendant persisted. The defendant is the subject of multiple National Center of Missing and Exploited Children ("NCMEC") Cybertips from June of this year related to ongoing conduct on Discord.[1] One report indicated that in September 2024, the defendant, using a new Discord account, asked an unidentified individual whom Discord believed to be a minor to send him a picture of her genitalia. After the minor sent a picture, the defendant responded, "she's pretty, like a little peach." Law enforcement assesses that the defendant knew she was underage because he called her a "kiddo" and a "sweet girl," referenced her wearing "jammies," described her as a "little girl," and asked that she call him "daddy"—all signs that indicate the defendant knew this minor victim was underaged—but he solicited child pornography from her anyway. The defendant also encouraged the minor to engage in harmful behaviors. For

---

[1] NCMEC is a private, nonprofit entity dedicated to reducing and preventing the exploitation of children. Among its other functions, NCMEC serves as a clearinghouse and reporting center for issues relating to the exploitation, abuse, victimization, and abduction of children. In particular, NCMEC maintains a "CyberTipline," through which the public and electronic service providers— including certain internet, technology, and social-media companies—make reports concerning child exploitation offenses and other crimes against children.

example, the defendant asked the minor how her "ED" (eating disorder) has been going. He then asked the minor when she last "purged." When the minor responded "today," the defendant encouraged her continued self-harm saying, "atta girl im proud of you keep yourself small." In another conversation a month later, the defendant again asked her when she last "purge[d]." Again, the minor victim indicated she made herself vomit that same day to which the defendant responded again "atta girl im proud of you." This time he further asked her to record herself doing vomitting one day so that he could watch. Another month later, in November 2024, the defendant told the minor: "making sure you're staying skinny kiddo."

Another Cybertip, also from June 2025, shows the defendant having a sexual conversation with a minor between March and May of 2025. When the minor tells the defendant that she is 13 years old, the defendant responded "fucking baby status." He then goes on to discuss sexual preferences with the 13-year-old, including preferences between being a "sub" (submissive), "dom" (dominant), or "switch" (a person who switches between submissive and dominant roles). Later in the conversation the defendant asked the minor for a picture of herself. After she apparently sent a picture, the defendant accused the minor of editing her waist and told the minor "starve more bitch." The defendant's conduct, both historical and recent, show that he is an acute danger to the physical and mental well-being of children.

C. Defendant's Arrest and Execution of Search Warrant

On December 2, 2025, the defendant was arrested on the indictment in this case. At the same time, law enforcement executed a judicially authorized search warrant on his residence. That search resulted in the seizure of numerous digital devices. The defendant had on his bed two powered on and operational Apple iPhones. Also in the defendant's room were a computer tower and a laptop. Most troublingly, in his dresser, were three broken Apple iPhones.

The iPhones were visibly destroyed in a way that law enforcement assess was likely the result of intentional destruction. See Exhibit A (photographs of the destroyed iPhones).

   D. Magistrate Judge Scanlon's Findings

On December 4, 2025, Magistrate Judge Scanlon held a detention hearing in this matter, hearing from both the government and the defendant. Judge Scanlon held that the defendant presented a danger to the community that could not be overcome by the proposed conditions of release. In the written explanation, the Court highlighted that the defendant had multiple electronic devices at the time of the search, suggesting evasive conduct; the defendant applied for a US passport despite claims that he could not travel; and that defendant allegedly committed conduct while living with the proposed third party custodian. ECF No. 20.

   E. Defendant's Ongoing Medical Care

---

[2] The information provided herein is based on information provided by BOP, as well as the undersigned's review of provided medical records.



[REDACTED]

### III. LEGAL STANDARD

A district court reviews de novo a magistrate judge's decision to release or detain a defendant pending trial. See United States v. Esposito, 309 F. Supp. 3d 24, 30 (S.D.N.Y. 2018) (Marrero, J.) (citing United States v. Leon, 766 F.2d 77, 80 (2d Cir 1985)). A district court undertakes a two-step inquiry when evaluating an application for bail. See 18 U.S.C. § 3142(e). First, the Court must determine whether the Government has established the defendant presents a danger to the community or a risk of flight. See 18 U.S.C. § 3142(e) (emphasis added). Second, if the Government meets its initial burden, the Court must determine whether no conditions or combination of conditions of release could reasonably assure the defendant will not flee or will not endanger others. See United States v. Sabhnani, 493 F.3d 63, 75 (2d Cir. 2007). In making that determination, a court must consider four factors in the detention analysis whether for risk of flight or dangerousness: (1) the nature and circumstances of the offense charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g).

The Government must support a finding of dangerousness by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight

must only be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

Conspiracy to produce, distribute, and receive child pornography, as well as the multiple other child exploitation-related counts charged here, carry a statutory presumption under 18 U.S.C. § 3142(e)(3) that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community."  See 18 U.S.C. § 3142(e)(3)(E) (presumption for offenses involving minor victims under 18 U.S.C. §§ 2251 and 2252(a)(2)).

To rebut this statutory presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam).  If this limited burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant present a risk of flight.  Id.

To determine whether the presumptions of dangerousness and flight are rebutted by a defendant, the Court must consider:

    (1)    the nature and circumstances of the crime charged;

    (2)    the weight of the evidence against the defendant;

    (3)    the history and characteristics of the defendant, including family ties, employment, financial resources, community ties, drug or alcohol abuse history and past conduct; and

    (4)    the nature and seriousness of the danger to the community or to an individual that would be posed by release.

18 U.S.C. § 3142(g). Once a defendant has met his burden of production relating to danger to the community and risk of flight, the presumption in favor of detention does not disappear entirely but remains a factor for the court to consider. Mercedes, 254 F.3d at 436.

IV. ANALYSIS

The nature and circumstances of the charged crimes and the weight of the evidence strongly support detention. The defendant is charged with ten counts, which involve the most serious federal crimes involving the repeated sexual exploitation of children. These offenses demonstrate a deliberate willingness to target vulnerable children, use deceptive and coercive tactics, and exploit technology to commit harm that is permanent, wide-reaching, and irrevocable. The nature of the charged conduct places this case squarely within the set of offenses for which pretrial detention is not merely permitted but strongly favored. Indeed, Congress has expressly determined that defendants charged with these offenses pose a heightened danger to the community and therefore created a rebuttable presumption of detention. See § 3142(e)(3)(E). Accordingly, the defendant bears the initial burden of showing that they are not a danger to the community or a flight risk. For the reasons set forth below, the defendant cannot sustain that burden.

A. The Defendant Poses a Danger to the Community

The defendant poses an acute and ongoing danger to children and should be detained pending trial. The defendant has repeatedly exploited children and his conduct demonstrates a uniquely dangerous disregard for the safety and vulnerability of minors, which creates a grave risk of continued harm if released. The defendant persisted in his crimes even after he was put on notice of the minor victims' ages by their prepubescent appearance, comments from other Discord users, or discussion amongst him and his co-conspirators. From his home, through the long arm of the internet, the defendant was able to conspire with others to form a "cult" to

harass and abuse children, as well as extort minors and adults alike. This was not an isolated event, but rather a long-standing pattern of abuse that the defendant quite literally cheered on. Even when the cult disbanded, the defendant continued to both exploit children and encourage them to engage in physically harmful behavior.

Child exploitation crimes like these often encompass predatory behavior, sophisticated methods of grooming or concealment, and a willingness to target those least able to protect themselves. It is this danger that explains why a presumption of detention exists in these cases. As then-District Judge Joseph Bianco opined:

> The reason for this presumption is clear. "No one questions that child pornography is an insidious offense since it takes advantage of a particularly vulnerable segment of society, children." United States v. Schenberger, 498 F.Supp.2d 738, 742 (D.N.J. 2007) (citing United States v. MacEwan, 445 F.3d 237, 250 (3d Cir. 2006)).

United States v. Valerio, 9 F. Supp. 3d 283, 289 (E.D.N.Y. 2014)

According to interviews conducted in this investigation, the defendant was at the forefront of this group, personally recruiting members, grooming minors, and threatening victims. He gathered his co-conspirators and directed them to engage in extortion – saying: "lets extort." He cheered on the production of child pornography involving a prepubescent victim, saying "Greggy's child." These factors indicate both a serious danger to the community and a high likelihood of recidivism, concerns that cannot reliably be mitigated by supervision or conditions of release. Indeed, the defendant used various aliases, Discord user and display names, email and other social media accounts to make it difficult for law enforcement to uncover their true identities. Because the defendant enjoyed anonymity for years, he was able to persist in his conduct even after Discord repeatedly removed his accounts or the Target Server from the platform; on those occasions, the defendant used new aliases to continue to engage in his criminal content.

Moreover, the defendant appears to continue to engage in the sexual exploitation of children as shown by the NCMEC Cybertips described above showing ongoing sexual

11

conversations with minors on Discord, as well as encouraging self-harming behaviors like eating disorders in those children. He has been able to continue his abuse of minors because of the ready access to the internet, where it is unfortunately easy for the defendant to find and target children. As District Judge Brown noted "the dangers presented by electronic sexual predatory conduct cannot be minimized – offenders engaging in such conduct unquestionably present greater dangers to children in the community than individual who possess or trade pre-existing images." United States v. Blackman, No. 22 MJ 272 (GRB), 2022 WL 843735, at *6 (E.D.N.Y. Mar. 22, 2022). He went on to note that "[p]aradoxically, because of the widespread availability of web accessible devices, the danger presented by such defendants proves increasingly more difficult to remediate." Id.; see also Valerio, 9 F. Supp. 3d at 289 ("Because of a person's ability to use his or her home, a computer, and/or a mobile phone to commit this type of alleged violent conduct, the ability to monitor, to detect, and to prevent such conduct from reoccurring on bail is extremely difficult."). This reasoning holds true here. Indeed, the search of the defendant's residence at the time of his arrest resulted in the seizure of two working and powered on Apple iPhones, three broken Apple iPhones, a computer tower, a laptop, two USB drives, a SIM card, and an Apple watch.[3] It is currently very easy to amass numerous electronic devices. And all it takes is one internet-connected device for the defendant to continue his predation.

Moreover, the evidence in this case is overwhelming. It includes statements from victims and witnesses, social media records, IP addresses, email accounts, as well as material obtained from Dosch and Valdez's electronic devices and homes which include dozens of videos of images of the sexual exploitation of children that unequivocally establish the defendant's guilt.

For all of these reasons, the government submits that the Court should enter a permanent order of detention against the defendant.

---

[3] The search also resulted in the seizure of five non-electronic items.

B.  The Defendant Presents a Risk of Flight

The Court should also enter a permanent order of detention because the defendant poses a significant risk of flight.  The defendant's substantial sentencing exposure increases the incentive to flee and weighs heavily in favor of detention.  The offenses with which the defendant is charged carry significant penalties.  The child exploitation enterprise charge carries a statutory mandatory minimum of twenty years' imprisonment and a statutory maximum of life.  18 U.S.C. § 2252A(g).  The sexual exploitation of children conspiracy and substantive charges carry a statutory mandatory minimum of 15 years' imprisonment and a statutory maximum of 30 years.  18 U.S.C. § 2251(e).  The Second Circuit has held that the possibility of a severe sentence is an important factor in assessing flight risk.  See United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987); see also United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").  As Judge Scanlon rightly highlighted, although the defendant claims he is ███████ and unable to flea, he did apply for a passport last year.

C.  The Proposed Bail Package is Inadequate

Although the government submits that no package would be sufficient to protect the community and ensure the defendant's appearance in this Court, the instant package is insufficient to accomplish these goals.  The defendant's proposed package includes a secured bond, signed by the defendant's family members and computer restrictions and internet monitoring.  This falls short in an aggravated, internet-facilitated child sexual exploitation case like this, where "by the click of a computer key or tap of a touchscreen on a mobile phone, defendant could cause the

13

same type of extreme harm to children and the community that he is alleged to have committed in the instant case." Valerio, 9 F. Supp. 3d at 292.

Valerio involved a defendant who filmed his sexual abuse of a child in his home, as well as used the internet to cause the abuse and production of child sexual abuse images of another minor overseas. There the defendant sought a bail package that included home confinement, GPS monitoring, privately-hired guards, cameras that could be monitored by the government, and a prohibition on possessing electronic devices. Id. at 287. The court found that even that combination of conditions was insufficient to assure the safety of the community, reasoning:

> Computers, mobile phones, tablets, etc.—the type of instrumentalities allegedly used to commit the crimes—are ubiquitous and easy to procure or hide, and increasingly even the lowest-level devices have internet functionality. Unlike in a jail, which provides greater layers of security to attempt to ensure that inmates do not possess contraband, the Court can conceive of several avenues through which defendant may procure or retain such devices on the premises, which heightens the risk of danger to the community. The Court is not convinced that defendant's mother, or even two guards, could ensure (to the same extent as jail) that defendant would not use such items. In other words, "it is difficult to conceive of measures that could confidently assure that defendant would not communicate with others and encourage the distribution of child pornography and related illicit activities." [United States v. ]Schenberger, 498 F.Supp.2d [738, 745 (D.N.J. 2007)]; accord United States v. Falcon, CRIMINAL NO. 06–60080–01, 2007 U.S. Dist. LEXIS 44358, at *15–16 (W.D. La. June 18, 2007) ("It is not possible to formulate conditions of release which would completely deprive such a defendant of the ability to possess or attempt to possess additional child pornography, 'or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.'" (quoting United States v. Reiner, 468 F.Supp.2d 393, 397 (E.D.N.Y.2006))).

Id. at 294–95. Other judges in this district have reasoned similarly when weighing these risks against such egregious harms. For example, in Blackman Judge Brown highlighted that the defendant "deployed web-based communications to convince children – through subterfuge, enticement and extortion – to engage in and electronically record and transmit images of sexual

activities." 2022 WL 843735, at *5. The court ultimately concluded that the proposed bail package that included a bond secured by his family, home detention, and computer restrictions, was "too insubstantial as measured against the potentially catastrophic risks." Id. The court highlighted that the defendant's use of the internet to facilitate the crime "significantly increases the risk of danger, as the defendant, afforded access to increasingly ubiquitous technology, could continue such conduct with devastating results." Id. These concerns are heightened in cases where a defendant has a history of obstructive conduct. See United States v. Kelly, No. 19-CR-286 (AMD), 2020 WL 2528922, at *3 (E.D.N.Y. May 15, 2020), aff'd, No. 20-1720, 2020 WL 7019289 (2d Cir. Sept. 8, 2020).

That the defendant had numerous digital devices including three cell phones that appear to have been intentionally destroyed is significant. By the time of the execution of the search in this case, two of his co-defendants had previously been arrested and charged in federal court with child exploitation related offenses—Zachary Dosch and Rumaldo Valdez. Both cases had received some amount of public attention and both were reportedly discussed in Discord groups that other individuals associated with Greggy's Cult viewed. It is against this backdrop that the defendant's possession of these destroyed phones must be viewed. This demonstrates the defendant is capable of destruction of evidence, while continuing to collect digital devices to persist in grooming minors. The defendant's proposed bail package does nothing to assuage the concern that he will obtain an internet-connected device, continue his abuse of minors, and, if probation comes knocking, destroy any evidence. Notably, here home detention would release the defendant back to the home where he committed these offenses. The defendant claims that the threat of detention provides him an incentive to comply with laws and conditions of release; however the defendant weighed that risk every time he chose to abuse and extort children and took the risk anyway.

In arguing for release, the defendant primarily rests his argument on concerns with MDC's ability to meet the health needs of the defendant. ████████████████████████ ████████████████████████████████████████████ But the defendant also fails to offer any evidence to support his claim that the MDC cannot adequately manage his medical needs. The defendant relies on decisions from 2024—including the Honorable Jesse M. Furman's decision in United States v. Chavez, 710 F. Supp. 3d 227 (S.D.N.Y. Jan. 4, 2024)—to argue that the MDC is unable to provide adequate care or safe housing. Those dated opinions do not reflect the current state of the MDC. As Judge Furman himself recognized on May 14, 2025:

> With respect to other arguments made in the defense's submission, on the MDC front, I'm certainly more than familiar with the circumstances at the MDC, and the place has still much need for improvement, but it is also a lot better than it was in January of last year when I wrote my opinion in United States v. Chavez that is cited in the defense's submission. As it happens, I just came from a meeting involving representatives of the MDC and got [the] latest statistics, which is that staffing is up to 75 percent, the medical services staff is significantly higher and fully staffed among nurses, the incidents of violence went from 42 in December, which was a rather significant number, to only nine in April; all of which is to say it's not nearly as bad as it was a year and a half ago and it's definitely trending in the right direction.

United States v. Reshard, No. 24 CR 392 (JMF) (S.D.N.Y. May 14, 2025) (filed at United States v. Burgos, No. 24 CR 650 (LTS) (S.D.N.Y.), ECF No. 10 at 6). The trend continues to move in the right direction. The staffing at the MDC overall is now at 87%, as of September 2025, with the Health Services Department now staffed at 85%, a dramatic increase from the 69% staffing level in January 2024 at the time of the Chavez opinion. Metropolitan Detention Center Brooklyn – Fact Sheet as of September 2025, Federal Bureau of Prisons, https://www.bop.gov/resources/pdfs/mdc_bro_des_fact_sheet_sep_2025.pdf (last visited Dec. 10, 2025). At the same time as the increase in staffing, the inmate population has decreased 20% from 1,580 inmates in January 2024 to 1,254 in September 2025. Id.

16

In light of these concerns and to ensure the defendant's needs were being met, Judge Scanlon ordered the MDC to provide, via the government, updates regarding the medical care the defendant has received every Monday, Wednesday, and Thursday. The MDC has provided these updates in a timely manner and continues to attest that ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ ███████████████████████ The record of this case demonstrates the MDC's compliance with the court's orders regarding the defendant. The regular reporting here is designed to assure that if any issue where to arise, the court, government, and defense counsel will be promptly notified and any remedies can follow.

The government takes seriously the concerns raised by the defendant. That does not outweigh the grave risk posed by the defendant here. This is a crime that can be and was committed from the defendant's home. Indeed, access to a single unmonitored device connected to the internet or a cellular network is all that the defendant would need to continue to exploit and abuse minors. No condition or combination of conditions can alleviate the defendant's risk. Moreover, where, as here, the MDC has demonstrated compliance with the court's order and adequate and ongoing treatment and monitoring of the defendant's health conditions, detention is warranted.

17

V.  SEALING

The government respectfully requests that this response be filed under seal. The government seeks leave to file the materials under seal because health information contained in the medical records are protected by the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936, and portions of the government's response describe such information. See Offor v. Mercy Med. Ctr., 167 F. Supp. 3d 414, 445 (E.D.N.Y. 2016) ("Courts in this Circuit have repeatedly held that information protected by [the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936] is not subject to a First Amendment or common-law right of access[,] and thus [they] have sealed docket entries and redacted documents that contain such information."), vacated in part on other grounds, 676 F. App'x 51 (2d Cir. 2017).

VI.  CONCLUSION

For the foregoing reasons, the government respectfully submits that no condition or combination of conditions are sufficient to ensure the safety of the community and the victims and witnesses in this case, as well as the defendant's return to court. Accordingly, the government respectfully requests that the Court deny the defendant's motion and continue his detention pending trial.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:  /s/
Gwendelynn Bills
Trial Attorney
Child Exploitation & Obscenity Section
(202) 616-2572

cc:  Defense Counsel (by ECF)
Clerk of Court (by ECF)